UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-20393-CR-ALTONAGA

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

ALEXANDER MCQUEEN, *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant, Alexander McQueen's ("McQueen['s]") Motion for New Trial [ECF No. 210]; and Defendant, Steven Dawkins's ("Dawkins['s]") Motion for Judgment of Acquittal or in the Alternative, for New Trial [ECF No. 211], both filed on November 14, 2011. The Court has carefully reviewed the parties' written submissions and applicable law.

### I.  Background

On September 22, 2011, a Superseding Indictment [ECF No. 121] was filed, naming as Defendants McQueen and Dawkins, and two others, Guruba Griffin ("Griffin") and Scott Butler ("Butler"). According to the Superseding Indictment, the South Florida Reception Center ("SFRC") is a state prison in Doral, Florida. (*See id.* ¶ 1). The SFRC's B-Dormitory houses youthful offender inmates. (*See id.* ¶ 2). On February 25, 2009, McQueen and Dawkins were Correctional Officers assigned to the B-Dormitory at the SFRC. (*See id.* ¶¶ 3, 6). S.R. was also a Correctional Officer at the SFRC. (*See id.* ¶ 7). Several inmates, identified by their initials, were serving sentences and were housed in the B-Dormitory. (*See id.* ¶¶ 8-14).

CASE NO.  11-20393-CR-ALTONAGA

Count One of the Superseding Indictment alleges that Defendants violated Title 18, United States Code, Section 241 because while acting under color of law, they conspired "to injure, oppress, threaten, and intimidate inmates at SFRC in the free exercise and enjoyment of the rights and privileges secured to them by the Constitution and law of the United States, namely, the right to be free from cruel and unusual punishment." (*Id.* ¶ 16).  The manner and means of the conspiracy consisted in the Defendants using force and threats of force to physically assault and intimidate the youthful offenders housed in Quad Three of B-Dormitory at the SFRC.  (*See id. ¶* 17).

Counts Two and Three allege McQueen and Dawkins, respectively, violated 18 U.S.C. section 1519 by knowingly falsifying and making false entries in records with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation.  (*See id.* ¶¶ 19–20).  The false entry by McQueen and the absence of a truthful entry by Dawkins pertain to the reporting of officers' use of force and resulting injuries.  (*See id.*).

The case proceeded to trial,[1] and at the conclusion of the trial, McQueen was found guilty of Counts One and Two (*see* [ECF No. 198]), and Dawkins was found guilty of Count Three (*see* [ECF No. 199]).[2]  Defendants seek a new trial pursuant to Federal Rule of Criminal Procedure 33, and in addition Dawkins seeks a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c).

---

[1] One jury heard the case against Defendants McQueen and Dawkins; another jury simultaneously heard the case against Defendants Griffin and Butler.

[2] The jury could not reach unanimous agreement on Griffin, and so a mistrial was declared as to Griffin. (*See* Order [ECF No. 203])  The jury found Butler not guilty. (*See* Verdict [ECF No. 200]).

CASE NO.  11-20393-CR-ALTONAGA

## II.  Standards

Defendants move under Federal Rule of Criminal Procedure 33 for a new trial, asserting the Court committed a number of errors and the Government was allowed to present erroneous evidence and argument.  "A Rule 33 motion for a new trial is the appropriate method for addressing allegedly erroneous evidentiary rulings."  *United States v. Ross*, No. 05-398, 2007 WL 2571620, at *14 (E.D. Pa. Aug. 31, 2007) (citation omitted).  "A new trial is warranted under this standard only if the court finds that 'there is a serious danger that a miscarriage of justice has occurred,' such that 'an innocent person had been convicted.'" *Id.* (quoting *United States v. Johnson*, 302 F.3d 139, 151 (3d Cir. 2002)).   The power of a court to grant a new trial is much broader than the power to grant a motion for acquittal.  *See United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001); *see also* 3 WRIGHT & HENNING § 553.  In reviewing a motion for a new trial, "a district court may weigh the evidence and consider the credibility of the witnesses."  *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004) (citation omitted).  "However, . . . the court 'may not . . . set aside the verdict simply because it feels some other result would be more reasonable.  The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *Id.* (quoting *United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir. 1985)).

Dawkins moves for a judgment of acquittal on the basis that there was no evidence he specifically impeded, obstructed or influenced a federal investigation, to support the jury's finding as to Count Three.   Rule 29(c) "tests the sufficiency of the evidence against defendant, and avoids the risk that a jury may capriciously find him guilty though there is no legally

CASE NO.  11-20393-CR-ALTONAGA

sufficient evidence of guilt." 2A CHARLES A. WRIGHT & PETER J. HENNING, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 461 (4th ed. 2010) (footnote call numbers omitted).  Under Rule 29(c), "a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) [hereinafter *Ward I*].  This means a "verdict of guilty must stand if there is *substantial evidence* to support it." *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998) (contrasting the Circuit's earlier incorrect view that only "slight evidence" was needed to support a conspiracy conviction) (emphasis added).  Any conflicts in the evidence are resolved in favor of the Government, and all inferences that tend to support the Government's case must be accepted. *See Ward I*, 197 F.3d at 1079.  When the Government relies on circumstantial evidence, "reasonable inferences rather than mere speculation, must support conviction." *United States v. Suttles*, 297 F. App'x 887, 888 (11th Cir. 2008) (citation omitted).  The Court is to determine "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Ward I*, 197 F.3d at 1079 (citations omitted); *see also United States v. Medina*, 485 F.3d 1291, 1296–97 (11th Cir. 2007).

### III.  Analysis

#### A.      Motions for New Trial

Defendants seek a new trial on the following grounds: (1) erroneous evidentiary rulings; (2) the Government's violation of the witness sequestration order; (3) improper restrictions on Defendants' closing arguments; and (4) improper jury instructions.  The Court addresses each of these arguments in turn.

CASE NO.  11-20393-CR-ALTONAGA

1.      Evidentiary Rulings

Defendants assert the Court committed error in evidentiary rulings in several ways.  The principal argument presented is that the Court improperly allowed the Government to bolster the testimony of its "star witness" Sharlisa Rolle ("Rolle"), by introducing evidence that Rolle was testifying under a non-prosecution agreement secured by threat of a polygraph.  Defendants argue the Court improperly allowed the Government to introduce a hearsay document, Exhibit 53, the Florida Department of Corrections Mission and Code of Conduct.  The next contention is that the Court allowed the Government to present inflammatory and prejudicial pictures of alleged victims as proof of the charged offenses even though those "victims" did not testify and were unavailable for cross-examination.  Defendants also assert the Court improperly limited ross-examination of inmate-witnesses regarding bad acts and their prejudice against law enforcement.

a.      Sharlisa Rolle

Sharlisa Rolle is a Corrections Officer at the SFRC.  She is not only Defendants' co-worker, she is a friend of Defendants Dawkins and Griffin.  She did not want to testify as a Government witness; she was subpoenaed to appear, and while she met with Government attorneys to talk about the case, she also met with Defendants' attorneys as well.  She was present the night when the charged acts were committed and was a witness to several of the material events.  In particular, she saw two inmates fighting in the presence of the Defendants and saw one holding a bloody shirt on his head.  When she left the scene, her words to herself were, I'm "[n]ot going to get involved in this shit." (Oct. 7 Trans. 24, l. 25).  Several days after

5

CASE NO.  11-20393-CR-ALTONAGA

the charged acts, Defendant McQueen called Rolle and asked, "Did anybody ask you about anything?" to which she responded, "No," and he replied, "Well, as long as you know you don't know nothing and we don't know nothing." (*Id.* 28, ll. 20-23).

Through her unwilling testimony, the Government was able to corroborate the inmates' accounts of what had occurred that night.  Rolle was indeed a valuable and powerful witness for the Government.

The Government was careful to reveal that Rolle had not always been truthful in her answers to the FBI regarding what she had witnessed.  Right before concluding the direct examination, and in response to the question, "But you eventually did tell the FBI what you've testified to today, didn't you?" Rolle stated, "Yes, they was [sic] going to polygraph me and told me I could be facing 10 years, yes." (*Id.* 30, ll. 12–13).  The Government then asked her, "So, you told them what you testified to today as a result of them telling you that they would polygraph you?" to which Rolle responded, "Yes."  This line of questioning was presented without objection.

In cross-examination by counsel for Dawkins, the following testimony was elicited:

Q.    Now, the government asked you --  you have spoken to the folks over here on many occasion, have you not?
A.    Yes.


                              *               *               *


Q.    And then on December 8th again, . . . they then, again, brought you to the FBI with two  --  with Alduende and an FBI Agent Rodriguez.  Am I correct?"
A.    Yes.

6

> Q.     That's when they threatened you, did they not?
> A.     Yes, that's when they told me they was [sic] going to give me a polygraph. If they found out I was lying, I could be facing 10 years.
>
> Q.     Didn't they tell you they could charge you and put you in jail for 10 years?
> A.     If they found out I was lying.
>
> Q.     Didn't they tell you they were going to take your babies away from you?
> A.     Yes.
>
> Q.     This is the FBI?
> A.     Yes.

(*Id.* 31, ll. 10–12, 24–25; 32, ll. 1–14).  And on cross-examination by counsel for Defendant

Butler, Rolle clarified that she "had never been polygraphed with respect to the testimony" she

was giving.  (*Id.* 78, ll. 16–17).

The first objection to Rolle's references to the FBI "threatening" to subject her to a

polygraph examination during her early meetings with FBI agents was made during Rolle's re-

direct examination:

> Q.     You knew you were going to fail that polygraph if you took it. Correct?
>
> MR. SHARPSTEIN:  Objection and move for a --
>
> THE COURT:  Please approach, gentlemen.
>
> [Proceedings at sidebar follow]:
>
> THE COURT:  What's improper  --
> MR. SHARPSTEIN:  I'm moving for a mistrial.
>
> THE COURT:  What's improper about the redirect?
> MR. SHARPSTEIN:  I never questioned her about a polygraph.
>
> THE COURT:  It has come up already.  It has come up several times.  I know about it from her testimony here today.

7

CASE NO.  11-20393-CR-ALTONAGA

MR. SHARPSTEIN:  She said something that I think is inappropriate.  We didn't elicit it.  I know for me, in my jury, it did not come in.

*          *          *

MR. SHARPSTEIN:   Polygraph should never come in front of a jury, whether she passed or flunked or failed.

THE COURT:  She never took one.  She was threatened with it.

(*Id.* 93, ll. 20–21; 94, ll. 1–20).

In their Motions Defendants rely on *United States v. Hilton*, 772 F.2d 783, 785 (11th Cir. 1985), to argue the basic proposition that "[e]vidence of a witness' willingness to submit to a polygraph examination . . . is inadmissible."  They state that "the results of a polygraph test are inadmissible into evidence is well settled" in the Eleventh Circuit.  *Id.*   Furthermore, they assert evidence that a witness may be required to submit to a polygraph examination as a condition of a plea agreement is also inadmissible.  *Id.* at 786.   Defendants maintain that the Government has an apparent oral non-prosecution agreement with Rolle whereby her compliance and testimony were assured by the threat of a polygraph.  Such evidence, they state, is impermissible under *Hilton*, permitted the improper bolstering of the Government's key witness by the Government's questioning and argument to the jury, and deprived Defendants of a fair trial.

Defendants' position is unavailing for several reasons.  First, Rolle revealed that after several interviews with the FBI she changed her story because she believed her deceit would be revealed if she took a polygraph.  When Rolle gave this testimony, after having been interviewed and having met with defense counsel — who claim no surprise concerning this information and who did not file any pre-trial motions seeking to limit her testimony concerning the fact that the

8

issue of a polygraph played a role in her change in position — she did so without any contemporaneous objection by the defense.  Consequently, Defendants have waived their right to object to that portion of her testimony.  *See* FED. R. EVID. 103(a)(1).

Thereafter, the issue of the polygraph, contrary to Defendants' statements in their Motions, did come up in cross-examination by two of the Defendants' attorneys, counsel for Dawkins and Butler.  Counsel chose to cross-examine Rolle regarding her credibility by probing the series of threats made by the FBI which led her to change her testimony, knowing full well that one of the reasons she finally implicated her friends and colleagues was that she feared she would fail a polygraph examination.  During this questioning, it was made clear that she had never been polygraphed.

As stated, the first objection to this line of questioning was made during the Government's re-direct examination.  And the basis for the objection was that counsel had never questioned her about a polygraph during cross-examination; that is, that the Government's question was outside the scope of cross-examination.  It was only upon further discussion at sidebar that the improper nature of polygraph evidence was ever suggested by the defense.

*Hilton* is distinguishable for several reasons.  In *Hilton*, the Government relied on the testimony of two co-defendants and one uncharged accomplice, each of whom had entered into a plea agreement that allowed for a polygraph examination to be administered, to prove the defendants did have knowledge of cocaine hidden aboard an aircraft.  The defendants, who had moved *in limine* to exclude the polygraph provisions of the agreements from evidence, were convicted of drug and conspiracy charges, and appealed on the basis that the Government's

9

CASE NO.  11-20393-CR-ALTONAGA

introduction of plea agreements referencing witnesses' willingness to submit to polygraph tests and reference to those polygraph provisions during closing argument had deprived defendants of a fair trial.  The Eleventh Circuit held it was error for the trial court to admit the plea bargain documents in evidence and to allow the prosecutor in final argument to contend that its witnesses were credible because they had agreed to take polygraph examinations.  *Id.* at 785–86.  This is because "[e]vidence of plea agreements containing provisions that the government's witnesses have agreed to take polygraph tests to verify trial testimony constitutes improper bolstering of the witnesses' credibility.  The harm from such evidence is likely to arise from a jury's lending special credence to these witnesses because of the binding force of the plea agreements.  The jury might well infer that the agreement itself assures the honesty of the witnesses."  *Id.* at 786.

Here, there was no evidence of a plea agreement between the Government and Rolle. The Defendants' argument that there is an "apparent" oral non-prosecution agreement is simply that — an argument — and is one way to interpret the Government's forbearance of bringing charges against Rolle, but it is not evidence of a plea agreement and certainly does not give rise to the *Hilton* court's concern about a jury lending special credence to Rolle because of the binding force of a plea agreement she might have with the Government.  Furthermore, it was made abundantly clear that a polygraph test was never administered and that results of such a test did not exist.  "The test for improper bolstering is whether the prosecutor's words might reasonably have led the jury to believe that that government possessed extrinsic evidence, not presented to the jury, that convinced the prosecutor of the defendant's guilt."  *Id.* at 787.  Lastly, and in contrast to the facts of *Hilton*, in closing argument the prosecutors did not mention the

10

CASE NO.  11-20393-CR-ALTONAGA

threatened polygraph examination in urging the jury to find Rolle's testimony credible.

Because Defendants' objection is untimely, and because Defendants were not deprived of a fair trial by the disclosure that Rolle changed her story to the FBI after being threatened with a polygraph (among other consequences), a new trial is not warranted on this ground.

### b.      Exhibit 53

Defendants object to the admission of the Florida Department of Corrections Mission and Code of Conduct, but they failed to timely object at trial to its admission.  In any event, the exhibit was admitted to show Defendants' awareness of the document, rather than for the truth of the statements contained therein.  A new trial is not warranted on this ground.

### c.      Photographs of Non-Testifying Victims

Defendants next assert it was error to allow the Government to introduce photographs of several injured inmates who did not testify and who were not subjected to cross-examination. The photographs in question were admitted as a composite Government exhibit during the Government's case without objection.  Captain Todd Sharpe authenticated the exhibit as consisting of fair and accurate depictions of the injuries he witnessed on six inmates following the night in question.  The Government established through other testimony that each of the inmates appearing in the photos was present in B-Dormitory the night the prisoner abuse took place, and eyewitnesses testified that each inmate depicted was attacked by one or more of the Defendants.  While Defendants objected to the exhibit when the Government rested without calling as witnesses the photographed inmates, such objection was properly overruled.  The inmates shown on the composite exhibit never testified, and Defendants were consequently not

11

deprived of the right to confront and cross-examine witnesses against them.

### d.      Limitations on Cross-Examination

Defendants maintain the Court committed error "in repeatedly refusing to allow defense counsel to cross-examine the inmate witnesses in regard to their numerous bad acts, their disciplinary violations at various correctional facilities, their bias and prejudice against law enforcement, and their motivation for testifying in this case." (Mot. 9 [ECF No. 210]).  As the Government correctly points out, Defendants "fail[] to identify a single example of a witness' alleged conduct that should have been admitted but was improperly excluded." (Resp. 9 [ECF No. 213]).  This is fatal to the Court's consideration of this argument because, "[w]hile cross-examination of a key government witness is important and free cross-examination on possible bias and motive is presumptively favored, the mere fact that defense counsel sought to explore a prosecution witness's bias does not automatically invalidate the court's ability to limit cross-examination." *United States v. Barrington*, 648 F.3d 1178, 1188 (11th Cir. 2011) (internal quotation marks and citations omitted).  Indeed, "[t]he test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination.  As long as sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias, the Sixth Amendment is satisfied." *Id.* (internal quotation marks and citation omitted).  While Defendants raise a blanket objection to limits placed upon them in exploring bad acts of the inmate-witnesses, they fail to address the operative test and explain as to each such Government witness how it is the jury would have received a different impression

of the witness's credibility.

2.      Witness Sequestration Order

During cross-examination of a Government witness, it was learned that incarcerated Government witnesses had been placed in the same cell together prior to and after testifying at trial, and spoke to each other about the case.  Defendants maintain they are entitled to a new trial because the Court erroneously denied a motion for mistrial based on a violation of the witness sequestration rule of Federal Rule of Evidence 615.  As the Court explained at the time the issue arose during the trial, the Eleventh Circuit has identified three sanctions at a court's disposal when the witness sequestration rule is violated: a citation for contempt; allowing thorough cross-examination before the jury on the facts of the violation; or striking the testimony given  --  the most serious of the three sanctions.  *See United States v. Jimenez*, 780 F.2d 975, 980 (11th Cir. 1986) (citing *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir. 1983)).  The undersigned applied the standards enunciated in *Jimenez*, and seeing no "connivance by the witness or counsel to violate the rule," *Blasco*, 702 F.2d at 1327, found thorough cross-examination about the violation sufficient to cure the violation.  The Court sees no reason to deviate from its initial decision now.

3.      Improper Restrictions On Defense

Defendants' next set of contentions address the Court improperly restricting McQueen's closing argument regarding crucial facts proved by the evidence.  Specifically, witness Marvin Woods ("Woods") testified at trial that no other inmates in the B-Dormitory had been fighting on the day of the events.  However, in a pre-trial interview with the FBI, he stated inmates had been

CASE NO.  11-20393-CR-ALTONAGA

fighting earlier in the day.  In cross-examination Woods denied making the contrary statement to

the FBI.  Defendants maintain they should have been permitted to argue to the jury that the prior

inconsistent statement constituted evidence of prior fights between inmates, which would serve

to explain the injuries the inmates suffered and which were depicted in the photographs admitted

in evidence.  By not allowing the argument to be made, Defendants assert they were precluded

from arguing the injuries were sustained not from the Defendant Officers, but during earlier

fights that took place the same day.

"It is well settled that a prior inconsistent statement of a witness can be used to impeach

him. . . .  It is equally well settled that such a statement, so used, should not become substantive

evidence in the case."  *Benson v. United States*, 402 F.2d 576, 581 (9th Cir. 1968) (citations

omitted; footnote call numbers omitted); *see also United States v. Martin*, 694 F.2d 885, 888 (1st

Cir. 1982) (prior inconsistent statement "is admitted not for the truth of the matter asserted in the

prior statement but to impeach the credibility of the witness.").  This argument fails to persuade a

new trial is warranted.

      4.      Jury Instructions

Defendants have several complaints about the Court's handling of jury instructions.

District courts have broad discretion in formulating jury instructions provided the charges as a

whole accurately reflect the law and the facts.  *United States v. Forrest*, 420 F. App'x 949, 950

(11th Cir. 2011) (citation omitted). Furthermore, supplemental jury instructions given in

response to a jury's question must be considered "in light of the entire jury charge."  *United*

*States v. Ford*, No. 05-16276, 2007 WL 1259047, at *4 (11th  Cir. Apr. 30, 2007) (citation

14

omitted).

Defendants assert the Court erroneously instructed the jury that Defendants could be found guilty of conspiracy to violate civil rights if Defendants were found to have acted with deliberate indifference; the Court erroneously denied a proposed instruction on 18 U.S.C. section 1519; the Court erroneously denied a requested standard instruction on the testimony of an accomplice, informer or witness with immunity; and the Court erroneously denied a request for the standard instruction on multiple conspiracies and improperly responded to a related jury question.  Each argument is addressed below.

> ### a.      Instruction on Deliberate Indifference

Defendants complain that the Court improperly instructed the jury as to deliberate indifference in relation to the conspiracy to violate civil rights charged under 18 U.S.C. section 241.  "[S]ince the gravamen of the offense under s 241 is conspiracy, the prosecution must show that the offender acted with a specific intent to interfere with the federal rights in question." *Anderson v. United States*, 417 U.S. 211, 223 (1974).

Regarding the conspiracy charge, the undersigned instructed the jury, in part, as follows:

> Count One charges that the Defendants knowingly and willfully conspired to deprive inmates at the South Florida Reception Center of their Eighth Amendment right under the United States Constitution to be free from cruel and unusual punishment. . . .  Count One charges Defendants . . . with violating Title 18, United States Code, Section 241.  The relevant part of Section 241 reads as follows:

> > If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the Untied States . . . they shall be guilty of an offense against the United States.

CASE NO.  11-20393-CR-ALTONAGA

\*          \*          \*

Each Defendant can be found guilty of this crime only if all of the following facts are proved beyond a reasonable doubt:

(1)     a conspiracy existed, that is, two or more persons in some way agreed to try to accomplish a shared and unlawful plan with the specific intent to deprive inmates at the South Florida Reception Center of the right to be free from cruel and unusual punishment;

(2)     the purpose of the conspiracy was to injure, oppress, threaten and intimidate, through excessive force and threats of excessive force, youthful offender inmates housed in Quad Three of B-Dormitory at the South Florida Reception Center to interfere with their free exercise and enjoyment of the rights and privileges secured to them by the Constitution and laws of the United States, specifically, the right to be free from cruel and unusual punishment; and

(3)     the Defendant, knowing the unlawful purpose of the conspiracy, willfully joined in it.

The first element of Count One requires the United States to prove beyond a reasonable doubt that two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Indictment.

\*          \*          \*

The second element of Count One requires the United States to prove that the purpose of the conspiracy was to "injure, oppress, threaten, or intimidate" inmates in the enjoyment or free exercise of their right to be free from cruel and unusual punishment. . . .

\*          \*          \*

The Eighth Amendment is violated when a corrections officer, acting with deliberate indifference, exposes an inmate to a substantial risk of serious harm.  A corrections officer acts with deliberate indifference when he knows of and disregards a substantial risk of serious harm to an inmate.  A substantial risk of serious harm includes a substantial risk of violent physical assault.

Thus if you find that the purpose of the conspiracy was to subject the

16

inmates to cruel and unusual punishment, through either or both manner and means discussed above — that is, by subjecting them to a bad-faith use of fore or to the unnecessary and wanton infliction of pain, and/or by knowingly disregarding a substantial risk of violent assault to an inmate at the hands of another inmate or corrections officers, then you may find that this element of the offense is satisfied with respect to Count One.

(Court's Instructions to the Jury, 5–7 [ECF No. 190]).

This instruction properly explained that in order for the Defendants to be found guilty of a conspiracy, each must have willfully joined in it.  The manner and means by which the conspirators could accomplish the purpose of the conspiracy — to injure, oppress threaten or intimidate inmates in the free exercise of their right to be free from cruel and unusual punishment — could be by either subjecting them to the unnecessary and wanton infliction of pain or by knowingly disregarding a substantial risk of violent assault.  The charge was explained this way because deliberate indifference by a correctional officer to a known substantial risk of serious harm to an inmate can constitute an Eighth Amendment violation.  *See, e.g.*, *Framer v. Brennan*, 511 U.S. 825, 837–38, 842 (1994).  Furthermore, the Court instructed that the jury had to find "two or more persons in some way agreed to try to accomplish a shared and unlawful plan with the *specific intent* to deprive inmates at the South Florida Reception Center of the right to be free from cruel and unusual punishment." (emphasis added).  The Court sees no error in the instruction and finds no basis for granting a new trial.

### b.      Denial of Proposed Instruction on 18 U.S.C. Section 1519

In making the argument that the Court erroneously instructed the jury on the elements of 18 U.S.C. section 1519, Defendants are repeating arguments raised in prior motions to dismiss, which the Court addressed in writing (*see* Order of September 16, 2011 [ECF No. 98]), as well

as at trial, outside the jury's presence.  For the reasons explained by the Court and explained in *United States v. Gray*, 642 F.3d 371 (2d Cir. 2011); and *United States v. Ionia Management, S.A.*, 526 F. Supp. 2d 319, 329 (D. Conn. 2007), the Court finds no error in the instruction regarding section 1519.

c.       *Denial of Instruction on Accomplice or Witness with Immunity*

Defendants argue the Court should have instructed the jury on the "Testimony of an Accomplice, Informer or Witness with Immunity," Eleventh Circuit Pattern Special Jury Instruction 1.1., because Rolle was, and the inmate witnesses were, witnesses with immunity.  As to Rolle, there was no basis in the evidence to conclude she was an accomplice or witness with immunity simply because she was not charged along with the Defendants.  As to inmate witnesses who were not disciplined administratively for fighting, the Court finds no basis to conclude that fact renders them witnesses with immunity such that the standard instruction should have been given.  Because Defendants' requested instruction has no basis in the evidence, *see United States v. Gold*, 743 F.2d 800, 819 (11th Cir. 1984), the Court finds no error in the failure to so instruct the jury.

d.       *Multiple Conspiracies and Response to a Related Jury Question*

Lastly, Defendants maintain the Court improperly refused to charge the jury on Eleventh Circuit Pattern Offense Jury Instruction 13.3, that proof of several separate conspiracies is not proof of the single conspiracy charged in the Superseding Indictment.  Defendants made the same argument at the charge conference, but did not show what other conspiracy would be supported by the evidence at trial.  Because there was no basis in the evidence to support the

18

giving of this instruction, there is no error in the failure to instruct or in the related answer the Court prepared for the jury in response to a question submitted.

### B.        Motion for Judgment of Acquittal

As stated, Dawkins seeks a judgment of acquittal on the basis that a reasonable jury could not have found him guilty beyond a reasonable doubt of specifically impeding, obstructing or influencing a federal investigation as charged in Count Three.   But, "in enacting § 1519, Congress rejected any requirement that the government prove a link between a defendant's conduct and an imminent or pending official proceeding."  *Gray*, 642 F.3d at 377.   Defendant fails to persuade that the Court should enter a judgment of acquittal.

### IV.  Conclusion

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Alexander McQueen's Motion for New Trial **[ECF No. 210]**; and Defendant, Steven Dawkins's Motion for Judgment of Acquittal or in the Alternative, for New Trial **[ECF No. 211]** are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of January, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record